UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DAVID LAKIN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:11-cv-00332-JAW |
| | ) | |
| PATRICIA BARNHART, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION**

Plaintiff David Lakin filed this civil action (Complaint, ECF No. 1), pursuant to 42
U.S.C. § 1983 and the Maine Civil Rights Act, 5 M.R.S. § 4682, and seeks injunctive relief and
compensatory and punitive damages against Patricia Barnhart, the former Warden of the Maine
State Prison, and Martin Magnusson, the former Commissioner of the Maine Department of
Corrections. (Complaint at 1.)  Lakin alleges that the defendants violated the Eighth Amendment
to the United States Constitution for failing to protect him from an assault by fellow prisoners
who used a padlock as a weapon in the assault.  (Complaint at 3.)  Pending before me is the
defendants' motion for summary judgment, pursuant to Fed. R. Civ. P. 56.  (Motion, ECF No.
44.)  I conclude that the plaintiff, as a matter of law, has not shown that the defendants were
deliberately indifferent to a substantial risk of serious harm in violation of Lakin's Eighth
Amendment rights.  I recommend that summary judgment be granted to the defendants.

**Facts and Procedural History**

The following facts are recounted in the light most favorable to Lakin as the nonmoving
party on the motion for summary judgment.  See Manske v. UPS Cartage Servs., Inc., 870 F.
Supp. 2d 185, 186 n.3 (D. Me. 2012) (citing Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11,
17 (1st Cir. 2002)).

**1.  The Assault on Lakin**

Lakin was assaulted on September 10, 2010, by two or possibly three fellow inmates. (Defendants' Statement of Material Fact (SMF) ¶¶ 1-3, ECF No. 45; Plaintiff's Amended Opposing Statement of Material Facts (Opp. SMF) ¶¶ 1-3, ECF No. 56.)  The last names of the two assailants who were definitely involved were Noble and Brackett, and the one who was possibly also involved was Diggins.  (SMF ¶ 2; Opp. SMF ¶ 2.)  Noble had previously assaulted Lakin, in 2006.  (SMF ¶ 5; Opp. SMF ¶ 5.)  Brackett was the assailant who used the padlock in the September 2010 assault on Lakin.  (SMF ¶ 3; Opp. SMF ¶ 3.)

After Noble's 2006 assault on Lakin, Noble was put in segregation and at one point he told Lakin that he believed it was Lakin's report of the assault that led to Noble's segregation. (SMF ¶ 6; Opp. SMF ¶ 6.)  An officer told Lakin that there was a "keep separate" order to keep him separated from Noble, although the defendants dispute whether there ever was such an order in the database prior to the 2010 assault on Lakin.  (SMF ¶¶ 8, 18; Opp. SMF ¶¶ 8, 18.)  Noble was eventually housed in the same housing pod as Lakin.  (SMF ¶ 9; Opp. SMF ¶ 9.)  Inmates in Lakin's housing unit have serious and dangerous criminal backgrounds.  (Plaintiff's Amended Additional Statement of Material Facts (Add'l SMF) ¶ 20, ECF No. 56; Defendants' Reply Statement of Material Facts (Reply SMF) ¶ 20, ECF No. 52; Barnhart Deposition at 2, ECF No. 47-8; Fowles Deposition at 2, ECF No. 47-9.)

Lakin did not expect the 2010 attack, but he was nervous around Noble due to the fact that Noble had previously assaulted him.  (SMF ¶ 11; Opp. SMF ¶ 11.)  Lakin did not have a history of fights or other issues with either Brackett or Diggins.  (SMF ¶ 12; Opp. SMF ¶ 12.)

### 2. Assaults on Other Prisoners

Lakin offers evidence of other reported inmate-on-inmate assaults of all kinds, and padlock assaults in particular, that have occurred at the Maine State Prison over the past several years, to support his argument that the defendants were deliberately indifferent to an obvious and substantial risk of padlock assaults. (Opp. SMF ¶¶ 19, 30-31; Add'l SMF ¶¶ 6-7; Reply SMF ¶¶ 6-7.) The parties dispute whether some of the other incidents of inmate-on-inmate violence were actually padlock assaults. (Add'l SMF ¶¶ 1-2; Reply SMF ¶¶ 1-2.) I interpret the facts in the light most favorable to Lakin, but I nevertheless conclude that there is no genuine issue of material fact for trial concerning these numbers.

I begin by noting that there are currently two companion cases involving other plaintiffs with some claims similar to those of Lakin and pending defendants' summary judgment motions. Keith Ayotte alleges that he was assaulted with a padlock by another inmate on October 28, 2010. (Ayotte v. Barnhart, 1:11-cv-00331-JAW, Defendants' Statement of Material Facts ¶¶ 1-3, ECF No. 51; Plaintiff's Amended Opposing Statement of Material Facts ¶¶ 1-3, ECF No. 66; Plaintiff's Amended Additional Statement of Material Facts ¶ 1, ECF No. 66.) Gerard Landry alleges that he was assaulted with a padlock by a fellow inmate on September 6, 2011. (Landry v. Barnhart, 1:12-cv-00016-JAW, Defendants' Statement of Material Facts ¶¶ 1-4, ECF No. 38; Plaintiff's Amended Opposing Statement of Material Facts ¶¶ 1-3, ECF No. 49.) Obviously the assaults in these related cases occurred after the assault on Lakin.[1]

---

[1]    Assaults that occurred after the one alleged by the plaintiff are irrelevant on the issue of the notice the defendants had of the risk to the plaintiff at the time of the assault on the plaintiff, see Beers-Capital v. Whetzel, 256 F.3d 120, 137 (3d Cir. 2001), but after-occurring assaults may be relevant to the issue of injunctive relief in a case in which there is otherwise a finding of an Eighth Amendment violation. See Farmer v. Brennan, 511 U.S. 825, 845 (quoting Pennsylvania v. West Virginia, 262 U.S. 553, 593 (1923)) (noting that the standard of subjective deliberate indifference does not require inmates "'to await the consummation of threatened injury to obtain preventive relief'").

The parties include figures indicating both overall numbers and trends concerning the total of all types of assaults as well as padlock assaults specifically. The summary judgment record does not contain the total population of inmates at the Maine State Prison over the same period of time to lend perspective to the assault numbers.[2] Regarding the overall number of assaults, the defendants state that from January 2004 to June 2012, there were 370 reported inmate-on-inmate assaults at the Maine State Prison, of which 15 were assaults in which a padlock was used. (SMF ¶¶ 34-35.) They also admit that not all inmate-on-inmate assaults are reported by inmates. (Add'l SMF ¶ 4; Reply SMF ¶ 4.) Lakin asserts that the defendants' figures of 370 total assaults and 15 padlock assaults should be increased by two, to account for the padlock assault on Ayotte and the padlock assault on Landry. (Opp. SMF ¶¶ 34-35.) I find that, for purposes of this motion, Lakin has presented prima facie evidence that over 370 assaults occurred at the Maine State Prison between 2004 through the first half of 2012, and of these at least 17 were padlock assaults. (SMF ¶¶ 34-35; Opp. SMF ¶¶ 34-35.)

Regarding trends in the numbers of overall assaults and padlock assaults, Lakin offers facts demonstrating that from September 2009 through September 2011, and especially in 2010, there was a marked increase in inmate-on-inmate violence overall, and an increase in padlock assaults in particular. (Add'l SMF ¶¶ 1-3.) It is undisputed that as to all types of inmate-on-inmate reported assault incidents, there were at least 25 in 2007, 28 in 2008, 50 in 2009, 48 in 2010, 51 in 2011, and 86 in the first nine months of 2012. (Add'l SMF ¶¶ 6-7; Reply SMF ¶¶ 6-7.) Of those, the prison record indicates that there were no padlock assaults in 2007, two in 2008, two in 2009, five in 2010, and one in 2012. (Add'l SMF ¶ 2; Reply SMF ¶ 2; Plaintiff's Exhibit 1 at 2-10, ECF No. 47-1.) To these, Lakin adds the 2010 assault on Ayotte and the 2011

---

[2]     The defendants' reply memorandum asserts that the Maine State Prison has a population of 700 or more male inmates, but this fact does not appear in the summary judgment record.

assault on Landry.  (Opp. SMF ¶¶ 34-35; Add'l SMF ¶ 4.)  I conclude that Lakin has produced

prima facie evidence that in 2010, there were two padlock assaults before the assault on Lakin

and three after it, making the assault on Lakin the third out of six padlock assaults during that

year.  (Add'l SMF ¶¶ 1-2; Reply SMF ¶¶ 1-2.)[3]

In addition, Lakin includes reference to a specific incident of inmate-on-inmate violence

in 2009 that he alleges resulted in the death of an inmate and disciplinary measures against three

prison staff members.  (Add'l SMF ¶¶ 12-14.)  The defendants admit the incident, but point out

that there is no evidence that any of the inmates or staff involved in that incident were alleged to

have been involved in the one at issue here.  (Reply SMF ¶¶ 12-14.)  Lakin does not assert that

this was a padlock incident and does not provide details about it.  (Add'l SMF ¶¶ 12-14.)

### 3.  Prison Policies

The Maine State Prison has a practice of issuing padlocks to all inmates except those in

segregation, as a means of securing their personal belongings.  (SMF ¶¶ 25, 28; Opp. SMF ¶ 25,

28.)  Prison authorities are required by Maine statute to provide inmates with some means to

secure their belongings: "Any person residing in a correctional or detention facility has a right to

. . . [a] reasonably secure area for the maintenance of permitted personal effects."  34-A M.R.S. §

---

[3]      Lakin's presentation of the number of alleged padlock assaults at the Maine State Prison in 2010 is
needlessly convoluted and confusing, but ultimately I add up the numbers as he alleges them.  All parties rely on a
record from the prison (Prison Record, ECF No. 47-1), and the defendants agree that this record accurately conveys
the number of assaults, although they dispute whether some of those assaults actually involved the use of a padlock
as a weapon.  (Add'l SMF ¶¶ 1-2; Reply SMF ¶¶ 1-2; Barnhart's Responses to Plaintiff's Request for Admissions at
1, ECF No. 47-5.)  There are five assaults documented in the prison record for 2010 (Prison Record at 2-6),
including one on October 23 on Lakin.  However, in Lakin's pleadings and in response to the summary judgment
motion, he alleges that he was assaulted with a padlock on September 10, 2010, which does not appear in the prison
record, but he does not allege that a padlock assault occurred on October 23.  (Defendants' Statement of Material
Facts (SMF) ¶¶ 1-3, ECF No. 45; Plaintiff's Amended Opposing Statement of Material Facts (Opp. SMF) ¶¶ 1-3,
ECF No. 56.)  Similarly, Lakin appears not to count both the September 10, 2010, and the October 23, 2010, assaults
when he adds up the numbers for 2010.  (Opp. SMF ¶ 31; Add'l SMF ¶ 1-2.)  I assume that the reason for this is that
in spite of the inclusion in the prison record of the October 23 assault on Lakin, the assault at issue here is the one
that occurred on September 10, 2010.  My legal conclusions and recommendation on the motion do not turn on this
assumption; I would reach the same conclusion and make the same recommendation even if there were an additional
padlock assault in 2010.

3031(7).  The prisoner handbook states: "The prisoner is responsible to secure his personal property in his assigned storage box with padlock when leaving his cell."  (SMF ¶ 27; Opp. SMF ¶ 27.)  Defendants Magnusson and Barnhart expressed their opinion that the benefit of issuing padlocks outweighs the risk that padlocks will be used as weapons.  (SMF ¶ 32; Opp. SMF ¶ 32.)  Lakin disputes whether it is necessary for inmates who live in the housing pod where he was assaulted to have padlocks, because in that housing pod the inmates are in individual cells with doors that lock.  (Opp. SMF ¶ 32.)

In response to Lakin's assertion that no inmate has had his padlock taken away because he used it to assault another inmate, the defendants state that inmates could have their padlocks taken away if the locks were misused.  (Add'l SMF ¶ 15; Reply SMF ¶ 15.)  However, Barnhart testified that inmates who had assaulted other inmates had not had their padlocks confiscated because "they would still need to secure their property," and "they're in a prison where if they want to find a weapon, they will find a weapon."  (Add'l SMF ¶ 17; Reply SMF ¶ 17.)  The prison has a number of policies designed to deter inmate-on-inmate violence, including classification procedures, specific housing placements, segregation, individual management plans, identification of high risk inmates, write-ups and other disciplinary measures, protective custody, prison transfers, and other measures.  (SMF ¶ 33; Opp. SMF ¶ 33.)  Lakin does not dispute that these exist, but he does dispute their effectiveness in deterring violence.  (Opp. SMF ¶ 33.)

### 4.  Procedural History

Lakin filed his complaint on August 30, 2011, against Barnhart; Magnusson; and a John Doe defendant, who was an unidentified correctional officer and who was later voluntarily dismissed from the litigation.  (Complaint at 1; Notice of Voluntary Dismissal, ECF No. 42.)

The complaint states that all defendants were sued in their individual capacities. (Complaint at 1.) The defendants filed a prior summary judgment motion (ECF No. 13) arguing that Lakin failed to exhaust available administrative remedies, but they later withdrew that motion without prejudice (ECF No. 23); the defendants, however, have not waived a factual dispute over whether Lakin has satisfied the grievance policy (ECF No. 41). Discovery was consolidated in the three related cases, i.e., 1:11-cv-00331-JAW; 1:11-cv-00332-JAW; and 1:12-cv-00016-JAW, to address the common issue of the defendants' policy of issuing padlocks to inmates at the Maine State Prison. (ECF No. 27.) The defendants filed a timely second motion for summary judgment on November 2, 2012. (ECF No. 44.) Summary judgment motions are pending in the two related cases as well.

### Discussion

### 1. The Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trialworthy issue exists." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (citing Nat'l Amusements Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### 2.   The Eighth Amendment Claim

Lakin argues that in light of the recent history of padlock assaults at the prison, the policy of issuing padlocks to inmates created a longstanding, pervasive, and obvious risk of harm to inmates to the extent that the policy reflected deliberate indifference by the defendants to inmate health and safety in violation of the Eighth Amendment to the United States Constitution.  Lakin does not argue that these two defendants knew, prior to the assault on Lakin, that there was a particular risk to him of this type of assault; rather, he argues that the increase in padlock assaults gave the defendants subjective knowledge of a general, substantial risk to all inmates that they could be harmed in padlock assaults.  See Francisco v. Hebert, 6:05-cv-01950-TLM-MEM; 2007 WL 1805772, at *5; 2007 U.S. Dist. Lexis 45271, at *17-18 (W.D. La. 2007) (noting that "rather than arguing that he was subject to a particular threat of harm from a specific inmate, plaintiff argues that he was subject to a generalized threat of harm from the use of a padlock as a weapon.")  Thus even if as Lakin suggests, a corrections officer knew that Lakin and Noble should be kept separated, that fact does not advance the claim against Barnhart and Magnusson. Lakin has not advanced a claim that they were deliberately indifferent to a specific threat of assault from Noble.

Title 42 U.S.C. § 1983 provides a right to bring a civil action against a person who, under color of law, deprives another person of a constitutional right.  "The essential elements of actionable section 1983 claims derive first and foremost from the Constitution itself . . . ." Drumgold v. Callahan, --- F.3d ---, 2013 WL 376747, at *20, 2013 U.S. App. Lexis 2301, at *66 (1st Cir. Jan. 31, 2013) (quotation marks and alteration omitted).  The Eighth Amendment proscribes the infliction of "cruel and unusual punishments."  Prison conditions are subject to Eighth Amendment scrutiny, and inhumane conditions are not permitted.  Farmer v. Brennan,

8

511 U.S. 825, 832 (1994); Leavitt v. Correctional Med. Servs., Inc., 645 F.3d 484, 497 (1st Cir. 2011).  Inmate-on-inmate violence is one of several deprivations that may create an intolerable prison condition.  Farmer, 511 U.S. at 833-34.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  Farmer, 511 U.S. at 828.  "Prison officials must take reasonable measures to guarantee inmates' safety from attacks by other inmates."  Calderón-Ortiz v. LaBoy-Alvarado, 300 F.3d 60, 64 (1st Cir. 2002).  In Farmer, the Court held that a prisoner must meet two requirements to demonstrate that his Eighth Amendment rights have been violated; he or she must demonstrate that (1) the conditions of incarceration pose, by an objective standard, "a substantial risk of serious harm," and (2) the prison official had a state of mind of "deliberate indifference to inmate health or safety."  511 U.S. at 834 (quotation marks omitted).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837.

"It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  Id. at 834.  The Supreme Court has adopted a standard of criminal recklessness as the test for deliberate indifference.  Id. at 839-40.  Criminal recklessness in the context of an Eighth Amendment claim requires conscious disregard of a substantial risk of serious harm.  Id. at 839.  "A factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  Id. at 842.  The Court stated:

> For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient

9

to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

Id. at 842-43 (quotation marks omitted).  In Farmer, the Supreme Court held that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Farmer, 511 U.S. at 844.

Although the First Circuit does not appear to have discussed the concept of pervasive risk in the context of an Eighth Amendment case, some other circuits have.  In Shrader v. White, 761 F.2d 975 (4th Cir. 1985), the Fourth Circuit reviewed its formulation of the general parameters of the concept: "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror in the particular institution."  Id. at 978 (quotation marks omitted).  In Shrader, the court addressed the duty of prison officials in the face of serious but infrequent assaults in which inmates used weapons made from scrap metal taken from the machine shop at the prison: "Although the evidence does not establish that there have been many injuries from these weapons, the condition should not be allowed to exist if it can be prevented by better inventory control and supervision of the machine shop or other places where scrap metals are produced and can fall into the hands of inmates."  Id. at 982.  Although Shrader predates Farmer, the Fourth Circuit's admonition to prison officials to minimize risk even when injury incidents are infrequent appears consistent with the duty of reasonable response articulated in Farmer. Farmer, 511 U.S. at 844; Shrader, 761 F.2d at 982.  In Shrader, the court remanded the case, after trial, for further proceedings to determine whether the risk to inmates of the scrap metal availability was pervasive.  Id. at 982-83, 987.

In a case concerning padlock assaults, <u>Beaton v. Tennis</u>, 460 Fed. Appx. 111 (3d Cir. 2012), the Third Circuit held that the plaintiff did not generate a genuine issue of material fact concerning whether a prison's padlock policy created a substantial or pervasive risk of harm to inmates. <u>Id.</u> at 114-15. The court noted that the defendant acknowledged that padlock assaults had occurred in the prison, these assaults typically occur at a rate of one or two per year, padlocks are needed to secure inmates' belongings, and inmates "may use even the most harmless objects as weapons." <u>Id.</u> The court found no error with the magistrate judge's conclusion that the failure to remove padlocks from the prison did not constitute deliberate indifference. <u>Id.</u> at 115.

Lakin attempts to draw parallels between the recent history of padlock assaults at the Maine State Prison and the facts of <u>Hale v. Tallapoosa County</u>, 50 F.3d 1579 (11th Cir. 1995). (Opposition at 7-8.) In <u>Hale</u>, the court denied summary judgment to a sheriff and county on the issue of deliberate indifference because the plaintiff had produced evidence that inmate-on-inmate violence occurred regularly when the jail was overcrowded and the staff failed to segregate violent from non-violent inmates. <u>Id.</u> at 1583-85. Here, in contrast, the summary judgment record does not demonstrate a long-standing history of frequent padlock assaults. Lakin tries to distinguish this case from <u>Price v. Armstrong</u>, 3:03-cv-01156-DJS, 2006 WL 980581, at *6; 2006 U.S. Dist. Lexis 20668, at *17 (D. Conn. 2006), in which the court granted summary judgment in favor of the defendants for failure to protect the plaintiff from the risk of a padlock assault. (Opposition at 10.) In <u>Price</u>, the court concluded that

> although there is evidence to suggest that inmates have used locks to harm other inmates, such as Price, who sustained a gruesome injury, there is no evidence to suggest that this type of assault was pervasive or even common. The possibility of harm is not equivalent to the substantial risk of harm. . . . [T]he absence of any statistical, documentary, or narrative evidence showing that this type of assault

11

was frequent or pervasive at [the prison] forecloses the conclusion that locks pose a substantial risk of harm to inmates.

2006 WL 980581, at *6; 2006 U.S. Dist. Lexis 20668, at *17-18.  In Price, the plaintiff lost at summary judgment because he failed to provide evidence of the frequency of incidents, id., whereas here, some evidence has been produced, but that evidence establishes that, with the exception of a period of several months during 2010, incidents of padlock assaults have been infrequent.

I conclude that Lakin has not demonstrated a genuine issue of material fact for trial concerning whether there was a longstanding and pervasive risk of harm and for that reason I recommend that summary judgment be granted to the defendants on the Eighth Amendment claim.  My reasons essentially parallel those explained by the court in Beaton.  460 Fed. Appx. at 114-15.  The number of padlock assaults per year has typically been relatively low, from zero to two per year.  Although there was a period of several months during 2010 when the number shot up, that does not represent a longstanding and pervasive risk of harm.  Furthermore, padlocks have a legitimate purpose; prison authorities are required by Maine statute to provide inmates with a "reasonably secure area" for their personal belongings.  See 34-A M.R.S. § 3031(7).  This statutory requirement does not relieve the defendants of their Eighth Amendment obligation to "take reasonable measures to guarantee the safety of the inmates," Farmer, 511 U.S. at 832 (quotation marks omitted), but it is a reminder that prison officials must address conflicting needs in a complex environment, and federal courts may accord deference where appropriate. See Turner v. Safley, 482 U.S. 78, 84-85 (1987).

That said, it would be a mistake for the defendants, or those currently in their positions, to interpret a favorable decision in this case as anything but a reflection upon the snapshot represented by the summary judgment record.  Although the facts in the record do not indicate

that padlock assaults are regular, frequent occurrences at the Maine State Prison, the number of padlock assaults that occurred in 2010 is alarming as well as is the general increase in inmate-on-inmate assaults.  The spike in the numbers during 2010 may not create a triable issue of fact on a claim of deliberate indifference in the context of this summary judgment record, but the defendants, or those currently in their positions as Warden and Commissioner, should by no means interpret such a conclusion as cause for complacency.  Nor should inmates interpret this as foreclosing any future challenge to the padlock policy.  See Farmer, 511 U.S. at 845.

### 3.  Qualified Immunity

The defendants move for summary judgment on grounds of qualified immunity.  (Motion at 12-13.)  "Qualified immunity 'provides defendant public officials an immunity from suit and not a mere defense to liability.'"  Air Sunshine, Inc. v. Carl, 663 F.3d 27, 32 (1st Cir. 2011) (quoting Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009)).  "'The qualified immunity inquiry is a two-part test.  A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was "clearly established" at the time of the defendant's alleged violation.'"  Id. at 32-33 (quoting Maldonado, 568 F.3d at 268 (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009))).  "[P]olice officers are protected in close cases by the doctrine of qualified immunity, and that immunity serves to protect law enforcement from the chilling threat of liability."  Swain v. Spinney, 117 F.3d 1, 10 (1st Cir. 1997).

If the Court agrees with me that there was no Eighth Amendment violation, it need not reach the issue whether the right was clearly established.  See Maldonado , 568 F.3d at 269-70 (noting that "[c]ourts have discretion to decide whether, on the facts of the particular case, it is

worthwhile to address first whether the facts alleged make out a violation of a constitutional right").  I do so here only for the sake of completion.

The two parts of the test for qualified immunity apply distinct analyses.  Part one subsumes the Eighth Amendment analysis addressed above, in which the essential issue is whether the defendant had actual knowledge, measured subjectively, of a substantial, pervasive, and longstanding risk to inmate health and safety and reacted with deliberate indifference to that risk.  See Farmer, 511 U.S. at 842.  Part two of the qualified immunity test concerns whether the state of pre-existing law made it obvious, measured by an objective standard, that the constitutional rule actually applied to the specific conduct at issue, such that officials were on notice.  Hope v. Pelzer, 536 U.S. 730, 739 (2002).  "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'"  Id. (citation omitted) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  As the First Circuit has noted, part two of the qualified immunity test itself "has two aspects: that both (1) the legal contours of the right in question and (2) the particular factual violation in question would have been clear to a reasonable official."  Lopera v. Town of Coventry, 640 F.3d 388, 396 (1st Cir. 2011).

The legal contours of the Eighth Amendment right are well-settled; in order to have a constitutional violation, there must be a substantial risk to inmate health and safety, the risk must be pervasive and longstanding, and the official must act with deliberate indifference in the face of subjective knowledge of the risk.  Farmer, 511 U.S. at 842-43.  Although the legal standard is

14

clear, the application of that standard to the facts in this case is not clear from available precedent.  The level of frequency of padlock assaults in this case, particularly when one includes those that occurred in 2010 after the assault on Lakin, distinguishes this situation from cases with very infrequent occurrences as well as those with frequent and regular occurrences. See Beaton, 460 Fed. Appx. At 114-15 (padlock assaults that occurred at a rate of one or two per year were insufficient to constitute a substantial or pervasive risk); Hale, 50 F.3d 1583-85 (inmate-on-inmate violence that occurred regularly when the jail was overcrowded and the staff failed to segregate violent from non-violent inmates was sufficient to constitute a substantial risk of serious harm).  Here, although the number of padlock assaults in 2010 increased and is cause for serious concern, "'officers of reasonable competence'" could nevertheless disagree on the lawfulness of continuing with the padlock policy.  See Lopera, 640 F.3d at 396 (quoting Malley v. Briggs, 475 U.S. 335, 342 (1986)).  In these circumstances, the defendants would be entitled to qualified immunity on the Eighth Amendment claim, even if the Court were to conclude that a constitutional violation occurred.  See id. at 396-97.

### 4.  Supplemental Jurisdiction Over the State Law Claim

The defendants argue that if summary judgment is granted on their federal claims, the Court should decline to exercise supplemental jurisdiction over Lakin's state-law claim, which he brings pursuant to the Maine Civil Rights Act (MCRA), 5 M.R.S. § 4682.[4]  "The disposition of a 42 U.S.C. § 1983 claim also controls a claim under the MCRA."  Berube v. Conley, 506 F.3d 79, 85 (1st Cir. 2007).  I recommend that the Court grant summary judgment on both of

---

[4]      The defendants also argue that any state tort claims are barred by discretionary function immunity, pursuant to 14 M.R.S. § 8104-B, and by Lakin's failure to meet the statutory notice requirement for tort claims, pursuant to 14 M.R.S. § 8107.  (Motion at 14-15.)  Discretionary function immunity is an affirmative defense to a claim under the Maine Tort Claims Act.  See 14 M.R.S. §§ 8103, 8104-B(3); Hilderbrand v. Washington Cnty. Comm'rs, 2011 ME 132, ¶ 7, 33 A.3d 425.  Lakin's complaint does not assert any state tort claims, and therefore I have no occasion to address the discretionary function immunity and statutory notice arguments raised by the defendants or the issue raised by Lakin  concerning supplemental jurisdiction over any tort claim.  (Opposition at 17.)

Lakin's claims.  See id.  I therefore consider the supplemental jurisdiction issue to be moot.  See
Rodrizuez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) (discussing the general
principles of supplemental jurisdiction, which may be applied at the discretion of the court when
all federal claims are decided against the plaintiff and only state-law claims remain).

### Conclusion

I recommend that the Court grant the defendants' motion for summary judgment.


### Notice

A party may file objections to those specified portions of a magistrate
judge's report or proposed findings or recommended decisions entered pursuant to
28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought,
together with a supporting memorandum, and request for oral argument before the
district judge, if any is sought, within fourteen (14) days of being served with a
copy thereof.  A responsive memorandum and any request for oral argument
before the district judge shall be filed within fourteen (14) days after the filing of
the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de
novo* review by the district court and to appeal the district court's order.

March 11, 2013                          /s/ Margaret J. Kravchuk
                                        U.S. Magistrate Judge